IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELDEE-K RENTAL PROPERTIES, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>DIRECTV, INC.,<br><br>    Defendant. | No. C 11-02416 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Eldee-K, a Connecticut apartment building owner, brings this putative class action against DIRECTV, alleging that DIRECTV installed satellite reception equipment on its property without its consent. Eldee-K challenges DIRECTV's nationwide policy permitting apartment tenants to obtain their landlords' <u>verbal</u> authorization to install the satellite equipment, claiming that the policy enables unauthorized installations.

DIRECTV moves to dismiss and to strike Eldee-K's class allegations. It essentially argues that this case, at its core, involves local and individual claims that the class plaintiffs must bring in the jurisdictions where their properties are located. The Court agrees.

**I.    BACKGROUND**

DIRECTV provides television programming to subscribers throughout the United States. Compl. (dkt. 1) ¶ 7. Unlike cable television companies, DIRECTV transmits the TV signal from orbiting satellites to satellite reception equipment that it installs at customers' homes. <u>Id.</u>

FCC regulations allow owners of multiple dwelling units ("MDU") control over the installation of this equipment "in common areas or restricted access areas that are not within the tenant's exclusive use or control." Id. ¶ 10. DIRECTV thus requires that MDU-tenants obtain landlord consent, where necessary, prior to installation of receivers through one of two methods: (1) written authorization from the landlord (Part 1 of DIRECTV's "Permission Form"), or (2) verbal authorization that the tenant certifies to DIRECTV, stating that the landlord has consented to the tenant putting up a satellite receiver (Part 2 of the Form). Id. ¶ 11.

Eldee-K, a Connecticut MDU owner, alleges that DIRECTV affixed a satellite reception dish to the exterior wall of one of its MDU's, pursuant to a Part 2 authorization, without in fact obtaining permission to do so. Id. ¶ 10. Eldee-K does not challenge DIRECTV's Part 1 authorization policy. However, it argues that the use of the Part 2 Form constitutes "a uniform, nationwide practice and policy designed to enable installation of the [satellite] Equipment in or on common or restricted areas of MDU's without prior written permission from the Landlord." Id. ¶ 12. Eldee-K alleges that this practice of "'documenting' non-existent Landlord 'consents'" has caused the unauthorized, "permanent[] and illegal[]" installation of DIRECTV equipment on Eldee-K properties. Id. ¶¶ 16-17.[1]

Eldee-K seeks to bring a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

> All persons or entities ("Landlords") that own and lease residential MDUs [sic] in the United States (the "MDU's") upon or in common or restricted areas of which Defendant DIRECTV or its agents ("DIRECTV") have permanently installed DIRECTV Equipment after obtaining Part 2 of a DIRECTV Installation Form to the installation of the Equipment.

---

[1] Counsel for Eldee-K previously filed a similar complaint on behalf of Jacen Management LLC, another Connecticut MDU owner, on January 26, 2011. See Jacen Mgmt. LLC v. DIRECTV, Inc., No. 11-384, dkt. 1. (The Court ordered the cases related on May 31, 2011. See Relation Order (dkt. 4).) DIRECTV moved to dismiss on similar grounds as here, see Mot. to Dismiss (dkt. 7) at 11. Jacen voluntarily amended its complaint but ultimately dismissed the case voluntarily. See Jacen, No. 11-384, dkt. 45.

Id. ¶ 18. Eldee-K claims that DIRECTV's Part 2 policy constitutes: (A) a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, based on DIRECTV's "adopti[on] and implement[ation] [of] policies and practices with the purpose and effect of enabling the illegal installation of the Equipment . . . in contravention of [DIRECTV's] legal duty not to enter common or restricted areas of MDU's without permission . . ." (Count I), id. ¶ 30; and (B) common law negligence, entitling the landlords to equitable relief (Count II) and damages (Count III), based on breach of an alleged "duty not to install the Equipment in or on common or restricted areas . . . upon receipt of the Part 2 of the DIRECTV Installation Form," id. ¶¶ 36.

DIRECTV now moves to dismiss, see Mot. to Dismiss, and to strike the class allegations, see Strike Mot. (dkt. 8).

## II. DISCUSSION

DIRECTV moves to dismiss on two grounds. First, it argues that the Court lacks subject matter jurisdiction because Eldee-K's claims "concern an injury to, and interest in, real property and thus are local in nature." Mot. to Dismiss at 1-2. DIRECTV argues that, under the "local action doctrine," "jurisdiction must be exercised in the state where the property is located." Id. at 2.[2] DIRECTV moves to dismiss the case, because the alleged injuries occurred in Connecticut, where Eldee-K's properties are located.[3]

Second, apart from the local action question, DIRECTV argues that the Court should equitably abstain from exercising jurisdiction where, as here, "complex regulatory schemes are implicated and which may result in the court's interference with the functions of an administrative agency." Id.

---

[2] The distinction between local and transitory actions parallels that of *in rem* and *in personam* jurisdiction. See Fisher v. Virginia Elec. and Power Co., 243 F. Supp. 2d 538, 542 (E.D. Va. 2003); Hallaba v. Worldcom Network Services Inc., 196 F.R.D. 630, 646 (N.D. Okla. 2000). "The reason for this parallel is simply that, in order to provide *in rem* relief, the court must have jurisdiction over the real property at issue, and a local action must therefore be brought in the jurisdiction in which that real property is located." Raphael J. Musicus, Inc. v. Safeway Stores, Inc., 743 F.2d 503, 506 (7th Cir. 1984).

[3] Although DIRECTV focuses on Eldee-K, its argument presumably extends to all members of the class: each plaintiff must bring its case in the jurisdiction where it suffered the alleged injury to its property.

3

The Court agrees with DIRECTV's argument under the local action doctrine, and thus, need not reach the second issue. "The local action doctrine is a relic of English common law imported into this country by Chief Justice Marshall while sitting as a circuit judge in Livingston v. Jefferson, 15 Fed. Cas. 660 (C.C.D.Va. 1811) . . . . It is not frequently invoked by the courts." Prawoto v. PrimeLending, 720 F. Supp. 2d 1149, 1152 (C.D. Cal. 2010) (citations and quotations omitted).[4] Although no federal statute codifies or defines the doctrine, a leading treatise states that "this concept imported from the common law now is established firmly in federal jurisprudence and the case law makes it as clear as anything can be that this distinction exists [between local and transitory actions] and that local actions can be brought only where the property involved in the action is located." 14D Wright, Miller & Cooper, Federal Practice and Procedure § 3822 (3d ed. 2011) (citing cases); see also United States v. Byrne, 291 F.3d 1056, 1061 (9th Cir. 2002) ("The federal district courts' jurisdiction over actions concerning real property is generally coterminous with the states' political boundaries."); Josevig-Kennecott Copper Co. v. James F. Howarth Co., 261 F. 567, 569-71 (9th Cir. 1919) (applying the local action doctrine).

Despite the doctrine's 200-year history, courts have struggled to define what constitutes a local action. Eldee-K and DIRECTV charge headlong into this definitional ambiguity: does this putative class action on behalf of landlords across the United States (based on DIRECTV's use of the Part 2, verbal consent process and its installation of equipment upon receipt of Part 2 authorization) constitute a transitory or a local action?

The Court's resolution of this question turns on its characterization of the lawsuit (see infra section 3), however, the Court must first clear some procedural brush regarding the doctrine's proper application (see infra sections 1 and 2).

**1. State Law Controls Whether This Case is Local or Transitory**

The parties dispute whether state or federal law should determine whether this action

---

[4] Livingston sued Jefferson, in Virginia, based on the federal government's seizure of his land in New Orleans during Jefferson's presidency. Marshall granted Jefferson's motion to dismiss, holding that a Virginia court could not exercise jurisdiction over a trespass in New Orleans. Livingston, 15 F. Cas. at 663. Marshall stated that "local" actions, unlike "transitory" actions, could only occur where the relevant property was located. Id.

4

1 is local or transitory. DIRECTV argues that California law controls, citing a Ninth Circuit
2 decision from 1919 that "admit[s] that the question whether the action is local or transitory is
3 to be determined by the law of the state." See Mot. to Dismiss at 6-7 (citing Josevig, 261 F.
4 at 569).

5       Eldee-K, on the other hand, argues that "federal common law" controls. Opp'n (dkt.
6 19) at 4 n.1. Although courts have challenged the quality of the precedent upon which
7 Josevig relied,[5] Josevig remains binding authority in the Ninth Circuit. See Prawoto, 720 F.
8 Supp. 2d at 1154 ("It matters not whether the court might, in the absence of binding circuit
9 authority, interpret [the precedent] differently. It is bound to apply Josevig[] as the law of the
10 Ninth Circuit."). Thus, this Court will apply California law in determining the nature of this
11 action.

12     **2.     The Court May Apply State Venue Rules in its Analysis**

13       Eldee-K also argues that the local action doctrine impacts jurisdiction as a matter of
14 federal law but impacts venue as a matter of state law. Opp'n at 8-9.[6] Although California
15 codifies a local action doctrine for venue purposes, see Cal. Code Civ. Proc. § 392,[7] it does

---

[5] See, e.g., Prawoto, 720 F. Supp. 2d at 1153 (citing cases discussing the Supreme Court's misinterpretation of its precedent in the case on which Josevig relied); see also Wright et al., supra, § 3822 (same). Some courts have rejected the precedent entirely. See, e.g., Fisher, 243 F. Supp. 2d at 543-544 (rejecting the "erroneous" precedent, applying federal law).

[6] Federal courts again handle the doctrine inconsistently – as determinative of venue in some places and jurisdiction in others. See Wright et al., supra, § 3822 (citing cases). However, the parties do not contest that DIRECTV moves to dismiss on jurisdictional grounds, and Ninth Circuit case law (though old and infrequent) supports the view that the local action doctrine pertains to subject matter jurisdiction. See Diaz-Barba v. Kismet Acquisition, LLC, No. 08-1446, 2010 WL 2079738, at *4 n.1 (S.D. Cal. May 20, 2010) ("The Ninth Circuit, however, has treated the issue as affecting subject-matter jurisdiction." (citing Columbia River Packers' Ass'n v. McGowan, 219 F. 365, 370 (9th Cir. 1914))); see also Prawoto, 720 F. Supp. 2d at 1153, n.6 ("[M]cGowan is the controlling precedent in the Ninth Circuit, and establishes that the local action doctrine is to be treated as a question of subject matter jurisdiction."); cf. Kingsborough v. Sprint Comm. Co., 673 F. Supp. 2d 24, 35 (D. Mass. 2009) (reviewing the case law, including the Ninth Circuit's decision in Byrne, and concluding, "after careful consideration . . . that the doctrine impacts jurisdiction rather than venue"). The parties accept here that the doctrine impacts subject matter jurisdiction, but they dispute whether a federal court, in analyzing its jurisdiction, may rely on state venue rules.

[7] Venue lies "in the county where the real property that is the subject of the action, or some part thereof, is situated . . . [in] the following actions: (1) For the recovery of real property, or of an estate or interest therein, or for the determination in any form, of that right or interest, and for injuries to real property; (2) For the foreclosure of all liens and mortgages on real property." Cal. Code Civ. Proc. §

1 not do so for jurisdictional purposes, see Opp'n at 14-15 (noting that, in 1966, California
2 repealed Article VI, section 5 of its Constitution, which previously defined local actions
3 jurisdictionally). Eldee-K thus argues that the local action doctrine does not limit the Court's
4 jurisdiction, if indeed the Court finds California law controlling, because California
5 jurisdictional rules do not contain a local action concept. Id.

6       Eldee-K's argument fails. No cases in the Ninth Circuit address the issue of applying
7 California venue principles to a federal local action analysis.[8] Despite this lack of direct
8 authority, the strongest argument urges application of § 392. Accepting Eldee-K's argument
9 (that the Court should not use § 392 in its application of California law to the local action
10 question) would effectively abolish the local action doctrine in federal courts in California.
11 California's local action doctrine pertains to venue; the federal doctrine pertains to
12 jurisdiction. If the Court cannot transpose the doctrine from California's venue rules, this
13 will result in the doctrine's complete absence in federal court.

14       Indeed, the fact that federal courts sitting in California continue to apply the doctrine[9]
15 indicates that the Circuit's application of state law does not cancel out the doctrine in its
16 federal (jurisdictional) form. Accordingly, the Court will apply California law and rely on §
17 392 and its related case law to determine whether this action is local.

18 //
19 //

---

392.

[8] The Central District of California took on the question in Prawoto, but the court ultimately obscured the distinction. 720 F. Supp. at 1158. The defendant moved to dismiss for lack of subject matter jurisdiction or improper venue. Id. at 1151. Although the court stated that the local action doctrine impacted subject matter jurisdiction in the federal courts, id. at 1157 n.8, the court discussed venue almost exclusively, id. at 1151-58. It did not specify on what grounds it dismissed the action as local, stating deficiencies of venue in one sentence and jurisdiction in the next. Id. at 1158.
    In considering the issue, however, the court recognized that "using [California's] venue provision to determine federal subject matter jurisdiction raise[d] unique concerns." Id. at 1156. For example, California courts can exercise "pendent venue" (jurisdiction over actions that present both local and transitory claims), while federal courts cannot (the presence of a local claim vests exclusive jurisdiction in the locality). Id. at 1156-57. The Prawoto court suggested that, given these concerns, the Ninth Circuit "might not reaffirm its decision in Josevig[] were it presented with the question today." Id. at 1157 n.8.

[9] See Prawoto, 720 F. Supp. 2d at 1151-61; Diaz-Barba, 2010 WL 2079738, at *4-6.

6

### 3.      This Action is Essentially Local in Character

Trespass constitutes a local action under both federal[10] and California[11] law. DIRECTV claims that Eldee-K has tried to "style[] [the action] as one of negligence and unfair business practices, although the gravamen of the suit plainly is one for injury to property,"[12] Reply (dkt. 22) at 10 – namely "DIRECTV's unconsented entry onto and modification of Eldee-K's real property," Mot. to Dismiss at 13-17.

Eldee-K argues that the "alleged wrong has nothing to do with land." Opp'n at 11. Instead, "the gravamen of this action is a violation of California's unfair competition law and simple negligence," id. at 15 n.7 (emphasis in original), not "an injunction against trespass . . ." id. at 13. In this mode, Eldee-K seeks to distinguish the California cases DIRECTV cites, see supra note 11, aligning itself with a series of federal cases that eschew the local action designation in actions involving trespass, see Mot. to Dismiss at 11-14. However, as the following discussion shows, the cases upon which Eldee-K relies are distinguishable in a critical respect: the contract question in those cases conceptually preceded, and determined liability as to, the trespass question.

In Fisher, for example, plaintiffs brought a class action against a utility company for the utility company's installation of fiber-optic cables on electric transmission lines, alleging

---

[10] See, e.g., Ellenwood v. Marietta Chair Co., 158 U.S. 105 (1895) (trespass is local); Kingsborough, 673 F. Supp. 2d at 31 ("Modern federal courts have consistently read Livingston to mean that 'an action for trespass to land, although an *in personem* action seeking monetary relief, was nevertheless local in nature." (citing Hayes v. Gulf Oil Corp., 821 F.2d 285, 287 (5th Cir. 1987)); Wright et al., supra, § 3822 (citing cases).

[11] California case law supports the position that "injuries to real property" under § 392 broadly encompasses injury to property, including trespass. See, e.g., Williams v. Merced Irrigation Dist., 4 Cal. 2d 238, 241 (1935) (holding that § 392 includes trespasses); Ophir Silver Mining Co. v. Super. Ct., 147 Cal. 467, 477 (trespass constitutes "injury to freehold"); Strosnider v. Pomin, 32 Cal. App. 2d 103, 109 (1939) ("The term 'injury to real property' is in itself a wider and less technical term than 'trespass to real property.'"); see also Foundation Engineers v. Super. Ct., 19 Cal. App. 4th 104, 109-14 (1993) (holding that tort damages to a building are local, after "determin[ing] the essence of the action" by asking, "What is its nature? . . . . What is its subject-matter? . . . . What is the main relief sought?" (citations and quotation marks omitted).).

[12] DIRECTV notes that the dismissed Jacen complaint alleges breach of a duty "not to invade Plaintiff's property without consent," which Eldee-K has now "disguised by subtle changes in the third round of pleading" as concerning, primarily, declaratory relief (and monetary relief secondarily) to limit the "unfair" Part 2 policy. Reply (dkt. 22) at 11.

7

that installation of the cables exceeded the scope of the utility's easements. 243 F. Supp. 2d at 541. Although the plaintiffs alleged a trespass, the Court found that determination of the claim required only the "the law of contract construction" in interpreting the proper scope of the easements. Id. at 548-56. It noted that "(a) [a] naked question of construction is determinative; (b) each of the grants contains substantially the same language; and (c) the circumstances of any individual easement's creation are largely, if not wholly, irrelevant." Id. at 552. Thus, that "action [wa]s transitory in nature because the principle and fundamental question [wa]s one of contract construction, not trespass." Id. at 553.

Another case, Musicus, involved a dispute over leases for several grocery stores. 743 F.2d at 505. As in Fisher, the Court determined that interpretation of the parties' agreements would determine liability. Id. at 510. "[T]he construction of lease terms is primary and the issue of trespass is secondary to the contract question . . . ." Id. at 511.[13]

Here, on the other hand, the trespass question precedes any liability relating to DIRECTV's business practice. Adoption and use of the Part 2 policy does not constitute a wrong in and of itself. Rather, it is the unauthorized entry onto property (which Eldee-K asserts that the Part 2 Form leads to) that is the key harm. Unlike Fisher and Musicus, the Court cannot resolve DIRECTV's liability through the construction of an ambiguous lease or easement. Instead, it must first inquire into whether DIRECTV installed equipment on common or restricted property without the landlord's consent. Put differently, although use of the Part 2 form might sometimes have led to trespass, it does not necessarily do so.

Thus, this case is more like Kingsborough and Hallaba than cases in which "a naked question of [contract] construction" determined liability. Fisher, 243 F. Supp. 2d at 552.

---

[13] Eldee-K also cites a Ninth Circuit decision to attempt to show that this action is transitory rather than local. See Opp'n at 13-14. That case, however, is the least analogous. In Montana Mining Co. v. St. Louis Min. & Mill. Co. of Montana, a land owner sued a mining company for invading his property and removing metal ore. 183 F. 51, 60 (9th Cir. 1910). Although the claim involved a trespass, the Court held that the action primarily concerned the conversion of the ore and was thus "the same in legal effect as a cause of action for the conversion of . . . personal property." Id. at 70. Unlike this case, in which the injury remains with the real property, the ore no longer pertained to realty once the mining company removed it from the land. See Stone v. United States, 167 U.S. 178, 182 (1897) (distinguishing cases in which the "gravamen" of the action concerns real property from actions in which "a judgment is asked, not for trespass, but for the value of the personal property so converted by the defendant").

8

Both Kingsborough and Hallaba involved class actions against telephone providers for their installation of fiber-optic cables on railroad rights-of-way that plaintiffs alleged exceeded the scope of the rights-of-way. See Kingsborough, 673 F. Supp. 2d at 30-35; Hallaba, 196 F.R.D. at 642-50. Unlike Fisher, the courts found that the "trespass claims . . . comprise[d] the core of [the] litigation," Kingsborough, 673 F. Supp. 2d at 33, because determination of land ownership, and thus liability, required "an inherently factual inquiry that requires a careful review of not only the deed, but also, in many instances, the surrounding circumstances. The Court must then determine the applicable state or federal law . . . . This process would be fact-specific and individualized." Hallaba, 196 F.R.D. at 640. Although, as Eldee-K notes, its claim "does not require a determination as to title and land ownership," Opp'n at 11-12 n.2 (citations and quotations omitted), the principle determinant of liability here (was a particular entry onto property authorized) requires individualized inquiry into the circumstances of the alleged trespass.[14] Here, like in Kingsborough and Hallaba, trespass is the essential predicate to liability, from which all other theories follow.

Although Eldee-K might focus on DIRECTV's business practice, liability derives, in the first instance, from trespass. Because trespass is the gravamen of the action, and a predicate to liability, the claims brought by Eldee-K are local in nature. Therefore, the Court must abstain from exercising jurisdiction over this case.

//

//

//

---

[14] And, although resolving Eldee-K's claims might "not require a determination as to title," it might require determinations as to right to possession of property (what constitutes "common" or "restricted" property) between landlord and tenant. See Strike Mot. (dkt. 8) 16-17.

Indeed, allowing Eldee-K's action to proceed presents the question whether California unfair competition law has a place in deciding whether DIRECTV acted improperly in affixing a piece of hardware in Connecticut. The parties provided supplemental briefing on the propriety of applying California law in a putative class action like this. Dtks. 28 & 29. Without taking a position on that issue, which is outside the scope of this ruling, the Court notes merely that there are serious concerns (highlighting the essentially local nature of this lawsuit) with having California law set a national standard for what is permissible and impermissible conduct regarding real property in the other 49 states.

9

## III. CONCLUSION

For the foregoing reasons, DIRECTV's Motion to Dismiss is GRANTED with prejudice. DIRECTV's Motion to Strike the class allegations is therefore rendered moot.

**IT IS SO ORDERED.**

Dated: November 17, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE